RAJIV DHARNIDHARKA, CA Bar No. 234756
  rajiv.dharnidharka@foley.com
MATTHEW D. CAPLAN, CA Bar No. 260388
  matt.caplan@foley.com
**FOLEY & LARDNER LLP**
ONE MARKET PLAZA
55 SPEAR STREET TOWER, SUITE 1900
SAN FRANCISCO, CA 94105
TELEPHONE:  415.434.4507
FACSIMILE:   415.434.4484

JOHN P. RILEY, CA Bar No. 356477
  jp.riley@foley.com
**FOLEY & LARDNER LLP**
11988 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2594
TELEPHONE:  858.847.6700
FACSIMILE:   858.792.6773

Attorneys for Defendants
NUCS AI, INC. and NIJAT
AHMADOV

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. ANDREI GAFITA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NUCS AI, INC., a Delaware corporation, NIJAT AHMADOV, an individual, and FARID YAGUBBAYLI, an individual,<br><br>Defendants. | Case No. 3:25-cv-10757-CRB<br><br>**DEFENDANTS NUCS AI, INC. AND NIJAT AHMADOV'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF DR. ANDREI GAFITA'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:  July 24, 2026<br>TIME:  10:00 AM<br>PLACE:  Zoom video conference<br>JUDGE:  Hon. Charles R. Breyer<br><br>COMPLAINT FILED: December 17, 2025<br>AMENDED COMPLAINT FILED: June 1, 2026 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that defendants Nucs AI, Inc. ("Nucs AI") and Nijat Ahmadov ("Ahmadov") will, and hereby do, move this Court on July 24, 2026, at 10:00 a.m. for an order dismissing plaintiff Dr. Andrei Gafita's ("Gafita") fifth and sixth causes of action for fraud in the inducement in his Amended Complaint without leave to amend pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) on the following grounds:

1.      Gafita's fifth cause of action for "fraud in the inducement" related to the First Amendment[1] to Gafita's Nucs AI Common Stock Purchase Agreement fails because Gafita does not sufficiently plead materiality, reliance, and falsity, and, with respect to the allegations related to a director position, the alleged promises do not constitute actionable misrepresentations. Moreover, Gafita's allegations do not satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. The Court should therefore dismiss this claim pursuant to Federal Rules of Civil Procedure 8, 9(b), and/or 12(b)(6).

2.      Gafita's sixth cause of action for "fraud in the inducement" related to the Second Amendment similarly fails because the alleged statements about "fair treatment" are non-actionable subjective opinions, and the statements about outside investment are forward-looking predictions that cannot form the basis of a fraud claim. Moreover, Gafita's allegations do not satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. The Court should therefore dismiss this claim pursuant to Federal Rules of Civil Procedure 8, 9(b), and/or 12(b)(6).

This Motion is based on this Notice of Motion and Motion to Dismiss; the accompanying Memorandum of Points and Authorities; the concurrently filed [Proposed] Order Granting Defendants' Motion to Dismiss; the pleadings and records on file in this action; and on such additional authority and argument as the Court may order or require.

//

---

[1] Defendants use the same defined terms as the Amended Complaint, except where otherwise noted.

Dated:  June 15, 2026

**FOLEY & LARDNER LLP**
Rajiv Dharnidharka
Matthew D. Caplan
John P. Riley

By: /s/ *Matthew D. Caplan*
　　Matthew D. Caplan
　　Attorneys for Defendants
　　NUCS AI, INC. and NIJAT AHMADOV

# TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENT ..................................................................................7

MEMORANDUM OF POINTS AND AUTHORITIES .....................................................9

I.    INTRODUCTION ........................................................................................9

II.   SUMMARY OF ALLEGATIONS.....................................................................9

      A.   FORMATION OF NUCS AI AND INITIAL STOCK ISSUANCE.........10

      B.   THE AMENDMENTS TO THE STOCK PURCHASE
           AGREEMENT ........................................................................10

      C.   THE STOCK RESTRICTION AGREEMENT AND CONSULTING
           AGREEMENT ........................................................................11

      D.   GAFITA'S LIMITED INVOLVEMENT AND TERMINATION ..........11

      E.   THE CLAIMS AT ISSUE IN THIS MOTION .........................................12

III.  LEGAL STANDARD .................................................................................13

IV.   ARGUMENT............................................................................................14

      A.   THE FIFTH CAUSE OF ACTION FAILS BECAUSE THE
           ALLEGED MISREPRESENTATIONS ARE NON-ACTIONABLE
           OPINIONS AND LACK PARTICULARITY UNDER RULE 9(B)........14

           1.   The Co-Founder Allegations Fail Because Gafita Does
                Not Plead Materiality, Reliance, or Falsity.....................................15

           2.   The Board Membership Allegations Fail Because an
                Invitation to Attend a Meeting Is Not an Actionable
                Misrepresentation..................................................................17

      B.   THE SIXTH CAUSE OF ACTION FAILS BECAUSE
           STATEMENTS ABOUT "FAIRNESS" AND FUTURE SUCCESS
           ARE NON-ACTIONABLE OPINIONS.......................................................19

           1.   Statements That Ahmadov Would Treat Gafita "Fairly"
                Are Subjective Opinions That Cannot Support a Fraud
                Claim...............................................................................19

           2.   Statements About Future Fundraising Success Are
                Forward-Looking Predictions, Not Verifiable Facts .......................21

      C.   LEAVE TO AMEND SHOULD BE DENIED BECAUSE
           AMENDMENT WOULD BE FUTILE .................................................22

V.    CONCLUSION.........................................................................................23

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Abagninin v. AMVAC Chem. Corp.*,
   545 F.3d 733 (9th Cir. 2008) ...................................................................................22, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................13

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ...................................................................7, 14, 16, 18

*Godecke v. Kinetic Concepts, Inc.*,
   937 F.3d 1201 (9th Cir. 2019) .....................................................................................13

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) .......................................................................................17

*Lynwood Invs. v. Konovalov*,
   No. 20-CV-03778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021)............7, 16, 19

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) .......................................................................................13

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .......................................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................................................13

*Toner v. Allstate Ins. Co.*,
   821 F.Supp. 276 (D. Del. 1993)................................................................................8, 20

*United States ex rel. Krawitt v. Infosys Techs. Ltd., Inc.*,
   342 F.Supp.3d 958 (N.D. Cal. 2018).........................................................8, 17, 20, 21

State Cases

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
   854 A.2d 121 (Del. Ch. 2004)..................................................................................8, 20

*Mooney v. E. I. du Pont de Nemours & Co.*,
    C.A. No. N17C-01-374-AML, 2017 WL 5713308 (Del. Super. Ct. Nov. 28, 2017) ...14

*Stephenson v. Capano Dev., Inc.*,
    462 A.2d 1069 (Del. 1983) ...........................................................................7, 14, 17, 18

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006)................................................................8, 14, 19, 20, 21

Federal Rules

Fed. R. Civ. P. 9(b) .......................................................7, 8, 9, 13, 14, 15, 16, 17

Fed. R. Civ. P. 12(b)(6)..................................................................................13

## SUMMARY OF ARGUMENT

Nucs AI and Ahmadov respectfully move to dismiss Gafita's fifth and sixth causes of action for fraud in the inducement because each fails as a matter of law.

### Fifth Cause of Action: Fraud in the Inducement – First Amendment

First, Gafita's fraud in the inducement claim regarding the First Amendment to his Nucs AI stock purchase agreement fails both substantively under Delaware law and procedurally under Federal Rule of Civil Procedure 9(b). To state a claim for fraud, a plaintiff must plead a false representation of material fact, knowledge of falsity, intent to induce reliance, reasonable reliance, and resulting damages. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). Gafita's two categories of alleged misrepresentation concerning his co-founder status and a future board seat fail to satisfy these elements. As to co-founder status, Gafita does not allege how such representations were material to his decision to execute the First Amendment, how he relied on them (or even that they were directed to him), or that they were false. As to the board membership allegations, an invitation to attend a board meeting is not an actionable misrepresentation of fact under *Stephenson*, and Gafita fails to allege a nexus between a purported promise of a board seat and his decision to enter into the First Amendment.

Second, many of Gafita's allegations still fail to meet Rule 9(b)'s heightened pleading standard, which requires a plaintiff to identify the "who, what, when, where, and how of the misconduct charged." *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). As this Court previously observed, Gafita "does not provide the time and place of the statements" and "fails to identify the specific speaker who made the statements, instead grouping multiple speakers together." Order Granting Mot. to Dismiss in Part at 15:8–13 (quoting *Lynwood Invs. v. Konovalov*, No. 20-CV-03778-LHK, 2021 WL 1164838, at *13 (N.D. Cal. Mar. 25, 2021)). While Gafita does provide more specifics about some of the alleged misrepresentations (which are still insufficient as discussed herein), many of them still fail to meet Rule 9(b)'s heightened standard.

///

**<u>Sixth Cause of Action: Fraud in the Inducement – Second Amendment</u>**

Gafita's fraud in the inducement claim regarding the Second Amendment likewise fails both substantively and procedurally. Gafita alleges two categories of misrepresentations: (1) that Ahmadov would treat him "fairly" and provide "fair compensation," and (2) that revesting was necessary to secure outside investment. The statements about "fairness" are non-actionable opinions that cannot support a fraud claim. A plaintiff may not bring a claim of fraud based on opinions or predictions about the future. *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 209–10 (Del. Ch. 2006). The term "fair" is inherently subjective; reasonable minds could differ on what constitutes "fair" treatment in a startup equity context. *See Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 148 (Del. Ch. 2004); *Toner v. Allstate Ins. Co.*, 821 F.Supp. 276, 281 (D. Del. 1993) (statements not constituting verifiable factual assertions cannot form basis of fraud claim).

The statements about outside investment are likewise non-actionable forward-looking predictions. Ahmadov's alleged statements that revesting "will be so good for the company" and that Gafita "won't need to work again after we make it" are predictions about future success, not verifiable statements of existing fact. *Trenwick*, 906 A.2d at 209–10. Gafita also fails to plead falsity as required by Rule 9(b). This Court previously found that "Plaintiffs must 'plead facts explaining why the statement was false when it was made.'" Order Granting Mot. to Dismiss in Part at 12:17–22 (quoting *United States ex rel. Krawitt v. Infosys Techs. Ltd., Inc.*, 342 F.Supp.3d 958, 963 (N.D. Cal. 2018)). Gafita's allegation that Nucs AI did not subsequently engage in fundraising (is not only wrong but) does not establish that the statement was false *when made* in November 2024. Because Gafita has not-and cannot-plead actionable fraud with the required particularity, the Court should dismiss the sixth cause of action without leave to amend.

//

//

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Nucs AI is an early-stage medical technology company that terminated one of its consultants, plaintiff Dr. Andrei Gafita, for cause. Unhappy that this means much of his stock award will not vest, Gafita attempts to recast arms-length business dealings as fraud in the inducement. But Gafita's own allegations reveal that the purported misrepresentations are either non-actionable opinions, forward-looking predictions about the company's future, or are untethered from the agreements at issue. Moreover, none are pleaded with the particularity that the law requires.

As to the fifth cause of action—fraud in the inducement of the First Amendment—Gafita relies on vague references to "co-founder" status and promises of a board seat. But Gafita fails to allege how these representations were material to his decision to enter into the First Amendment, how he relied on them, or even that they were false.

With respect to the sixth cause of action—fraud in the inducement of the Second Amendment—Gafita fares no better. His claim rests on statements that Ahmadov would treat him "fairly" and that revesting was necessary to secure outside investment. But "fairness" is inherently subjective and cannot form the basis of a fraud claim, and Gafita's own allegations fail to explain why the statements about fundraising were false at the time they were made.

Gafita was given a full and fair opportunity to cure his pleading deficiencies and has failed to do so. Because Gafita has not and cannot plead actionable fraud with the particularity required under Delaware law and Federal Rule of Civil Procedure 9(b), the Court should dismiss Gafita's fifth and sixth causes of action without leave to amend.

### II.    SUMMARY OF ALLEGATIONS

This dispute arises from Gafita's dissatisfaction with the terms of written agreements that he voluntarily executed with Nucs AI. The Amended Complaint's allegations, when examined with the contracts upon which Gafita relies, reveal that he knowingly agreed to each provision he now challenges.

### A.    Formation of Nucs AI and Initial Stock Issuance

Nucs AI was incorporated in March 2024. Am. Compl. ¶ 18, Dkt. No. 37. On May 15, 2024, the Nucs AI Board of Directors (the "Board") authorized the issuance of shares to the company's principals, including 4,700,000 shares for Gafita. Am. Compl. ¶¶ 19, 21. On or around May 17, 2024, Gafita and Nucs AI entered into the Common Stock Purchase Agreement, pursuant to which Gafita purchased those 4,700,000 shares for a total purchase price of $470.00, consisting of $47.00 in cash and $423.00 in the form of intellectual property assets assigned to Nucs AI. Am. Compl. ¶ 22, Ex. A, Dkt. No. 37-1. The Stock Purchase Agreement provides that it is "the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between them relating to the subject matter hereof." *Id*. at Ex. A § 7(b).

### B.    The Amendments to the Stock Purchase Agreement

In July 2024, Gafita entered into the First Amendment, which introduced a vesting schedule and required Gafita to enter into a consulting agreement with Nucs AI. Am. Compl. ¶¶ 23–24, Ex. B, Dkt. No. 37-2. Gafita alleges that "Ahmadov and Yagubbayli told Gafita that revesting his shares was necessary to facilitate outside investment." Am. Compl. ¶ 29.

In January 2025, Gafita entered into the Second Amendment, which provided that all 4,700,000 shares would vest at a rate of 1/48th per month beginning February 1, 2025. Am. Compl. ¶¶ 35, 38, Ex. C, Dkt. No. 37-3.

Both the First Amendment and Second Amendment contain integration clauses that provide that the amendment "along with the CSPA, sets forth the entire agreement and understanding of the parties relating to the subject matter herein and merges all prior or contemporaneous discussions, understandings and agreements, whether oral or written, between them relating to the subject matter hereof." Am. Compl. Ex. B at § 3(b); Ex. C at § 2(b).

///

### C.      The Stock Restriction Agreement and Consulting Agreement

In January 2025, Gafita also executed the Stock Restriction Agreement, which governs the vesting of his shares. Am. Compl. ¶ 41, Ex. D, Dkt. No. 37-4. The Stock Restriction Agreement contains a repurchase option allowing Nucs AI to repurchase unvested shares at their original purchase price of $0.0001 per share if Gafita quit or was terminated for cause. Am. Compl. ¶ 41. The Stock Restriction Agreement is governed by Delaware law. Am. Compl., Ex. D § 7(a). Gafita also executed a Consulting Agreement and Confidential Information and Invention Assignment Agreement, both of which took effect in January 2025. Am. Compl. ¶ 44, Ex. E, Dkt. No. 37-5.

The Stock Restriction Agreement defines "Cause" with specificity, requiring, inter alia, a written demand and opportunity to cure for performance-related terminations. Am. Compl. ¶ 43. Although Gafita disagrees with Nucs AI's conclusion, he concedes Nucs AI complied with the procedural requirements of a for-cause termination. Am. Compl. ¶¶ 56–61. The Stock Restriction Agreement provides that if Gafita was terminated "without Cause," his unvested shares would accelerate and vest immediately. Am. Compl. ¶ 42.

### D.      Gafita's Limited Involvement and Termination

The Amended Complaint acknowledges that Gafita maintained full-time employment at Johns Hopkins Medicine throughout his involvement with Nucs AI. Am. Compl. ¶ 39. Gafita admits he "could only commit 15 hours weekly to Nucs AI" due to "limitations imposed by his primary employer." Am. Compl. ¶ 39. Despite these admitted limitations, Gafita received the largest share allocation of any individual involved in the company.

On June 20, 2025, Nucs AI issued Gafita a "Notice of Breach and Demand for Cure" in accordance with the Consulting Agreement. Am. Compl. ¶ 56. Following the cure period, on August 11, 2025, Nucs AI terminated Gafita's Consulting Agreement for cause. Am. Compl. ¶ 61. Gafita alleges that the bases for his termination enumerated were "false and pretextual." Am. Compl. ¶ 61.

///

### E. The Claims at Issue in This Motion

This motion addresses Gafita's fifth and sixth causes of action for fraud in the inducement regarding the First Amendment and Second Amendment, respectively.

In the fifth cause of action, Gafita identifies two categories of representations he claims are false that induced him into executing the First Amendment: (1) representations regarding his co-founder status; and (2) representations regarding board membership. Am. Compl. ¶ 104. And Gafita's sixth cause of action for fraud in the inducement (regarding the Second Amendment) identifies two separate categories of representations: (1) representations regarding fair treatment and compensation; and (2) representations regarding the necessity of revesting to secure outside investment. Am. Compl. ¶ 114. The Amended Complaint does not allege any specific facts demonstrating why these statements were false at the time they were made. The alleged statements in the fifth and sixth causes of action are:

Statements Regarding Co-Founder Status (5th Cause of Action)

- Numerous representations, including during a meeting with an investor in Baku, Azerbaijan, in May 2024, and in various company documents and materials, including pitch decks and other investor materials, that Gafita was a co-founder and a key member of the Nucs AI team;

- Ahmadov created a WhatsApp group titled "Co-founders" which included only himself, Yagubbayli, and Gafita;

- Representations made via Slack in April 2024 wherein Ahmadov referred to Gafita and Yagubbayli as "my co-founders";

- Representations made in connection with the sharing of the Co-Founders Code of Conduct document on June 12, 2024, that Nucs AI viewed Gafita as a co-founder and core member of the team.

Am. Compl. ¶ 104.

Statements Regarding Board Membership (5th Cause of Action)

- Numerous representations, beginning in May 2024 and continuing through June 2024, by Ahmadov and Yagubbayli, that Gafita would be made a member of the Board of Directors of Nucs AI, including on or around June 5, 2024, when Gafita was invited to a board meeting attended by Ahmadov and Yagubbayli and treated as a board member.

Am. Compl. ¶ 104.

Statements Regarding Fair Treatment and Compensation (6th Cause of Action)

- Ahmadov's statement to Gafita in or around October 24, 2024 in Berlin, Germany at the company's office that "I'm a fair guy, I'll treat you fairly," and his promises to Gafita that he would be provided with fair compensation for his contributions to Nucs AI, including his intellectual property, his sweat equity, and access to his professional network.

Am. Compl. ¶ 114.

Statements Regarding Outside Investment (6th Cause of Action)

- Representations made by Ahmadov in or around November 23, 2024, in Brussels, Belgium, at Hotel Steigenberger Wiltcher's, and reiterated in the preamble to the Second Amendment, that Gafita's revesting was necessary to secure outside investment for Nucs AI. Ahmadov made additional statements to Gafita at that time, including "This will be so good for the company"—meaning his revesting—and "You won't need to work again after we make it."

Am. Compl. ¶ 114.

## III.  LEGAL STANDARD

The Court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation modified). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

In evaluating a fraud-based claim, the Court applies the heightened pleading standard under Rule 9(b). *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Rule

9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake" by identifying "the who, what, when, where, and how of the misconduct . . . as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Fed. R. Civ. P. 9(b); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation modified).

## IV.    ARGUMENT

Gafita's fraud in the inducement claims fail because he has not and cannot allege the elements required under Delaware law and has also failed to meet the heightened pleading requirements under federal law. To state a claim for common law fraud under Delaware law, a plaintiff must plead the following: (1) that the defendant represented false material facts as true; (2) that the defendant made the representation with the knowledge or belief that the representation was false or with reckless indifference to the truth; (3) that the defendant intended to induce the plaintiff to take action based on the representation; (4) that the plaintiff reasonably relied on the representation; and (5) that the plaintiff suffered damage as a result of their reliance. *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). A plaintiff may not bring a claim of fraud based on opinions or predictions about the future, unless the defendant knew they were false when making them. *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 209–10 (Del. Ch. 2006); *Mooney v. E. I. du Pont de Nemours & Co.*, C.A. No. N17C-01-374-AML, 2017 WL 5713308, at \*6 (Del. Super. Ct. Nov. 28, 2017). To satisfy the heightened pleading requirements under Federal Rule of Civil Procedure 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso*, 637 F.3d at 1055 (citation modified).

### A.    The Fifth Cause of Action Fails Because the Alleged Misrepresentations Are Non-Actionable Opinions and Lack Particularity Under Rule 9(b)

In the fifth cause of action, Gafita alleges that he relied on two categories of representations from Nucs AI, Ahmadov, and (as-of-yet un-served) defendant Farid

Yagubbayli ("Yagubbayli") to induce him to enter into the First Amendment: (1) representations that Gafita was a co-founder and a core member of the Nucs AI team; and (2) representations that Gafita would be made a member of the Nucs AI Board of Directors. Am. Compl. ¶ 104. As discussed below, each allegedly false statement or representation cannot form the basis for a fraud claim, fails to meet Delaware's elemental standards for fraud, or fails to meet the heightened pleading requirements under federal law.

### 1.      The Co-Founder Allegations Fail Because Gafita Does Not Plead Materiality, Reliance, or Falsity

Gafita alleges that defendants made "[n]umerous representations" that he was a co-founder of Nucs AI, including representations made during a meeting with an investor in Baku, Azerbaijan; in company documents and pitch decks; in a WhatsApp group titled "Co-founders"; via Slack messages; and in connection with a "Co-Founders Code of Conduct" document. Am. Compl. ¶ 104. These allegations fail both substantively under Delaware law and procedurally under Rule 9(b). Notably, most of these statements were not directed at Gafita (e.g., statements made to or directed at third parties).

*First*, Gafita fails to allege materiality or reliance as required under Delaware law. Gafita fails to allege how his co-founder status was material to his decision to execute the First Amendment or how he relied on such representations in doing so. As this Court previously held in dismissing the original complaint's reliance on co-founder status, "the attempted explanation in Gafita's brief is wholly absent from his complaint." Order Granting Mot. to Dismiss in Part at 13:12–13. The Amended Complaint suffers from the same defect. Gafita does not allege that his co-founder status was discussed in connection with the First Amendment, nor does he explain the nexus between being called a "co-founder" (especially to third parties) and his decision to agree to a vesting schedule for his shares. Whether Gafita was described as a "co-founder" has no logical relationship to whether he would enter into an agreement governing the vesting of his shares. *See* Am. Compl., Exs. B–C. Moreover, Gafita's own allegations undermine any claim of materiality:

according to the Amended Complaint, the other two founders, Ahmadov and Yagubbayli, were also subject to vesting conditions on their shares. Am. Compl. ¶¶ 10–11, 20. If the other founders were required to vest their shares, the fact that Gafita was described as a "co-founder" has no bearing on whether he would agree to similar vesting terms.

*Second*, even if Gafita could satisfy Delaware's substantive requirements for fraud, his allegations fail to meet the heightened pleading standard under Rule 9(b). With respect to the statements made during the investor meeting in Baku, Gafita does not identify "who" made the alleged misrepresentations. Am. Compl. ¶ 104. With respect to the statements made in "various company documents and materials," Gafita does not identify who made the statements, does not specify when they were made (other than one pitch deck in April 2024), and does not allege the specific substance of the statements. *Id.* With respect to the WhatsApp group, Gafita does not allege when the group was created, why or what the misrepresentation actually was (you can name a group chat anything), or any relevant contents of messages shared in the group chat. *Id.* And with respect to the Co-Founders Code of Conduct document shared on June 12, 2024, Gafita does not identify who shared the document or what specific representations were made in connection with it. *Id.* These vague allegations fall far short of the heightened pleading standard, which requires plaintiffs to identify the "who, what, when, where, and how of the misconduct charged." *Cafasso*, 637 F.3d at 1055. And, again, none of these are tied to the First Amendment; they are just things that happened at the company in 2024.

As this Court previously observed, Gafita "does not provide the time and place of the statements" and "fails to identify the specific speaker who made the statements, instead grouping multiple speakers together." Order Granting Mot. to Dismiss in Part at 15:8–13 (quoting *Lynwood Invs. v. Konovalov*, No. 20-CV-03778-LHK, 2021 WL 1164838, at *13 (N.D. Cal. Mar. 25, 2021)). The Amended Complaint suffers from the same defects. Accordingly, Gafita's allegations regarding co-founder status fail to state a claim for fraud under Delaware law and fail to meet Rule 9(b)'s heightened pleading requirements.

*Third*, Gafita fails to allege that the representations were false as required under Rule

9(b). *See United States ex rel. Krawitt v. Infosys Techs. Ltd., Inc.*, 342 F.Supp.3d 958, 963 (N.D. Cal. 2018) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc)). Unlike the original Complaint—which alleged that defendants "treat[ed] and describ[ed] Gafita as a co-founder" while "omitting Gafita as a co-founder in company documentation"—the Amended Complaint now relies solely on representations that Gafita *was* a co-founder and that the company held him out as one. *See, e.g.*, Am. Compl. ¶ 104. Nowhere does Gafita allege that he was *not*, in fact, a co-founder of Nucs AI. Indeed, the Amended Complaint contains numerous allegations regarding what Gafita claims to have contributed to the company. *See, e.g.*, Am. Compl. ¶¶ 1–4, 17–21. Without alleging facts supporting that the representations were false, Gafita fails to satisfy the pleading requirements under Rule 9(b). *See United States ex rel. Krawitt*, 342 F.Supp.3d at 963.

## 2. The Board Membership Allegations Fail Because an Invitation to Attend a Meeting Is Not an Actionable Misrepresentation

Gafita alleges that Ahmadov and Yagubbayli made "[n]umerous representations, beginning in May 2024 and continuing through June 2024" that Gafita would be made a member of the Board of Directors of Nucs AI, "including on or around June 5, 2024, when Gafita was invited to a board meeting attended by Ahmadov and Yagubbayli and treated as a board member." Am. Compl. ¶ 104. These allegations fail to satisfy the elements of fraud under Delaware law and also fail to satisfy the heightened pleading standards under Rule 9(b).

*First*, an invitation to attend a board meeting does not constitute an actionable misrepresentation, and is not an indicia of fraud. Am. Compl. ¶ 104. A fraud claim requires a "false representation of material fact." *Stephenson*, 462 A.2d at 1074. An invitation to a meeting is not a statement of fact about board membership; it is simply an invitation. An invitation to attend a board meeting is also not the same as an election to the board, which generally requires a shareholder vote. Employees, contractors, and other stakeholders are routinely invited to board meetings when matters relevant to their work are discussed, particularly at early-stage companies like Nucs AI. The integration clauses in the stock

purchase agreement and both amendments also cuts against any claim of fraud here as the agreements do not provide for a board seat. Am. Compl., Ex. A § 7(b), Ex. B § 3(b), Ex. C § 2(b). Importantly, Gafita does not allege that he was not allowed to attend the meeting.

*Second*, Gafita fails to allege reasonable reliance. Gafita did not and cannot allege that he reasonably relied on the alleged representations regarding board membership in deciding to execute the First Amendment. *See Stephenson*, 462 A.2d at 1074. As this Court held in dismissing the original Complaint, "Gafita fails to allege reliance . . . . [H]is complaint does not explain how a promise of a board seat convinced him to later agree to contracts about vesting his shares." Order Granting Mot. to Dismiss in Part at 14:2–4. The Amended Complaint suffers from the same defect. Gafita's conclusory assertion that he relied on these representations does not cure the fundamental problem identified by the Court: there is no factual nexus alleged between the purported promise of a board seat and Gafita's decision to convert a portion of his vested shares into unvested shares under the First Amendment. *See* Am. Compl. ¶ 107. Furthermore, if Gafita would not have signed the First Amendment absent a promise of board membership, the logical course of action would have been to require that such a term be included in the agreement. *See* Am. Compl. ¶ 108. The fact that Gafita negotiated and executed a detailed written contract without any mention of board membership, and now claims he only signed because of oral promises not contained therein, is precisely the type of claim that integration clauses are designed to preclude.

*Third*, Gafita's allegations do not satisfy Rule 9(b). Gafita alleges only that "[n]umerous representations" were made "beginning in May 2024 and continuing through June 2024," without identifying what specific statements were made, who made each statement, or on what specific dates. Am. Compl. ¶ 104. Nor does Gafita describe any details regarding what being "treated like a board member" entailed. *See id.* Rule 9(b) requires a plaintiff to identify the "who, what, when, where, and how" of the alleged misconduct. *Cafasso*, 637 F.3d at 1055. Gafita's vague reference to "numerous representations" over a two-month period and his general treatment without any specificity

as to the content, speaker, or timing of particular statements, fails to satisfy this standard. *See Lynwood Invs.*, 2021 WL 1164838, at *13 (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

Accordingly, Gafita's allegations regarding board membership fail to state a claim for fraud under Delaware law and fail to meet Rule 9(b)'s heightened pleading requirements.

**B.    The Sixth Cause of Action Fails Because Statements About "Fairness" and Future Success Are Non-Actionable Opinions**

In the sixth cause of action, Gafita alleges that he relied on two categories of representations from Ahmadov to induce him to enter into the Second Amendment: (1) representations that Gafita would be treated fairly and provided with fair compensation; and (2) representations that Gafita's revesting of shares was necessary to secure outside investment for Nucs AI. Am. Compl. ¶ 114. As discussed below, each allegedly false statement or representation cannot form the basis of a fraud claim, fails to meet Delaware's standards for fraud, or fails to meet the heightened pleading requirements under federal law.

**1.    <u>Statements That Ahmadov Would Treat Gafita "Fairly" Are Subjective Opinions That Cannot Support a Fraud Claim</u>**

Gafita alleges that Ahmadov made two statements regarding fair treatment: (1) a statement on "or around October 24, 2024 in Berlin, Germany at the company's office that 'I'm a fair guy, I'll treat you fairly'"; and (2) "promises to Gafita that he would be provided with fair compensation for his contributions to Nucs AI, including his intellectual property, his sweat equity, and access to his professional network." Am. Compl. ¶ 114. Both categories of statements are non-actionable opinions under Delaware law and nevertheless fail to satisfy Rule 9(b)'s pleading requirements.

***First***, the statements at issue—that Ahmadov would treat Gafita "fairly" and that Gafita would receive "fair compensation"—are opinion statements that cannot form the basis of a fraud claim under Delaware law. *See Trenwick Am. Litig. Tr.*, 906 A.2d at 209–

10. Although the Court previously noted that "fairness can [be] subjective," it found that the original Complaint "centers on the 'compensation' part of the statement." Order Granting Mot. to Dismiss in Part at 14:24–26. However, the Amended Complaint now explicitly centers Gafita's reliance on the "fair" part: Gafita alleges he was induced by Ahmadov's statement that he "would be treated fairly" and that "I'm a fair guy, I'll treat you fairly." Am. Compl. ¶¶ 114, 118. A plaintiff may not bring a claim of fraud based on opinions or predictions about the future. *See Trenwick Am. Litig. Tr.*, 906 A.2d at 209–10.

Further, the term "fair" is inherently subjective because reasonable minds could differ in interpreting what constitutes "fair" treatment or "fair" compensation, especially in the context of a startup equity arrangement. *See Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 148 (Del. Ch. 2004). Compensation may take myriad forms: shares, cash, board seats, benefits, or some combination thereof. What one party considers "fair" may differ substantially from another's view. Because "fairly" does not constitute a verifiable factual assertion, it cannot form the basis of a fraud claim. *See Toner v. Allstate Ins. Co.*, 821 F.Supp. 276, 281 (D. Del. 1993).

***Second***, the Amended Complaint also fails to satisfy Rule 9(b)'s heightened pleading requirements. While Gafita provides specificity as to the October 24, 2024 statement in Berlin, he does not provide the same specificity for the other alleged "promises" regarding fair compensation. The Amended Complaint does not identify when these additional promises were made, where they were made, or the specific content of each promise. *See* Am. Compl. ¶ 114. Moreover, Gafita does not allege why these statements were false at the time they were made. As this Court previously observed, Rule 9(b) requires a plaintiff to "plead facts explaining why the statement was false when it was made." Order Granting Mot. to Dismiss in Part at 12:20–22 (quoting *United States ex rel. Krawitt v. Infosys Techs. Ltd., Inc.*, 342 F.Supp.3d 958, 963 (N.D. Cal. 2018)). Gafita fails to do so.

Therefore, Gafita's allegations regarding fair treatment and fair compensation fail to state a claim for fraud under Delaware law and fail to meet Rule 9(b)'s heightened pleading

requirements.

## 2.   Statements About Future Fundraising Success Are Forward-Looking Predictions, Not Verifiable Facts

Gafita alleges that Ahmadov made "[r]epresentations . . . in or around November 23, 2024, in Brussels, Belgium, at Hotel Steigenberger Wiltcher's, and reiterated in the preamble to the Second Amendment, that Gafita's revesting was necessary to secure outside investment for Nucs AI." Am. Compl. ¶ 114. Gafita also alleges that "Ahmadov made additional statements to Gafita at that time, including 'This will be so good for the company'—meaning his revesting—and 'You won't need to work again after we make it.'" These allegations fail because Ahmadov's statements are opinions and forward-looking predictions that cannot form the basis of a fraud claim under Delaware law and Gafita fails to plead falsity as required under Rule 9(b).

*First*, Ahmadov's statements that revesting "will be so good for the company" and that Gafita "won't need to work again after we make it" are opinions and predictions about the future that cannot form the basis of a fraud claim under Delaware law. *See Trenwick Am. Litig. Tr.*, 906 A.2d at 209–10. These statements reflect subjective judgments about the anticipated benefits of revesting and speculative predictions about future success, not verifiable statements of existing fact. A plaintiff may not bring a claim of fraud based on "opinions or predictions about the future, unless the defendant knew they were false when making them." *Id.*

*Second*, Gafita fails to plead falsity as required under Rule 9(b). This Court previously held that "Gafita fails to plead falsity under Rule 9(b)" because his complaint "merely concludes that the statement was 'pretextual and false' and 'part of a fraudulent scheme.'" Order Granting Mot. to Dismiss in Part at 12:10–14. The Court explained that "Rule 9(b) . . . requires more. Plaintiffs must 'plead facts explaining why the statement was false when it was made.'" *Id.* at 12:17–22 (quoting *Krawitt*, 342 F.Supp.3d at 963).

The Amended Complaint attempts to cure this deficiency by alleging that "Nucs AI did not engage in any fundraising efforts between October 2024 and Gafita's departure

from the company in August 2025." Am. Compl. ¶ 37. However, this allegation still fails to explain why the statement was false when it was allegedly made in November 2024, or why future fundraising efforts after his departure would not be relevant.

Whether Nucs AI engaged in fundraising from October 2024 to January 2025 does not demonstrate that Ahmadov's statement that revesting was necessary to secure outside investment was false at the time. The Second Amendment is dated January 10, 2025, so any investment activity prior to that date does not demonstrate falsity. *See* Am. Compl., Ex. C.

Further, Gafita's allegation that Nucs AI "did not raise funds in the aftermath of Gafita's revesting," does not explain why the representation itself was false at the time the statement was made. *See* Am. Compl. ¶ 114. As this Court previously observed, "the allegation that Ahmadov's statement later enabled Nucs to divest Gafita's shares does not explain why the representation itself was false when made." Order Granting Mot. to Dismiss in Part at 12:28–13:2.

Accordingly, Gafita's allegations regarding revesting shares to support outside investment fail to state a claim for fraud under Delaware law.

**C.    Leave to Amend Should Be Denied Because Amendment Would Be Futile**

The Court should not grant Gafita leave to amend because the Amended Complaint demonstrates that any further amendment would be futile. Where a plaintiff has already been given the opportunity to cure deficiencies identified by the Court and fails to do so, dismissal without leave to amend is appropriate. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008). Here, the Court's prior Order identified multiple fatal deficiencies in Gafita's fraud claims, including his failure to allege materiality, reliance, or falsity with respect to the co-founder representations; his failure to specify "who" made the alleged misrepresentations, "when" they were made, and "where" they were made; and his failure to plead facts explaining why the alleged statements were false when made. Order Granting Mot. to Dismiss in Part at 12:16–18, 13:18–19, 15:4–7. Despite being afforded the opportunity to amend, Gafita has failed to cure these deficiencies. The Amended

Complaint still does not allege how the co-founder representations were material to his decision to execute the First Amendment or how he relied on them. *See* Section IV.A.1, *supra*. His allegations still group multiple speakers together over multi-month periods without identifying who made specific statements or when. *See* Section IV.A.2, *supra*. And his allegations still fail to explain why the statements regarding outside investment were false at the time they were made. *See* Section IV.B.2, *supra*. Because Gafita had a full and fair opportunity to replead and still cannot state a claim, leave to amend should be denied. *See Abagninin*, 545 F.3d at 742.

## V.    CONCLUSION

For the foregoing reasons, Nucs AI and Ahmadov respectfully request that the Court grant their Motion to Dismiss in its entirety, without leave to amend.

Dated: June 15, 2026

**FOLEY & LARDNER LLP**
Rajiv Dharnidharka
Matthew D. Caplan
John P. Riley

By: /s/ *Matthew D. Caplan*
Matthew D. Caplan
Attorneys for Defendants
NUCS AI, INC. and NIJAT AHMADOV