GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
JUSTIN L. SOWA, ESQ. (SBN 305002)
(jsowa@grellas.com)
550 California Street, Suite 1040
San Francisco, CA  94104
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Plaintiff DR. ANDREI GAFITA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. ANDREI GAFITA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NUCS AI, INC., a Delaware corporation, NIJAT AHMADOV, an individual, and FARID YAGUBBAYLI, an individual,<br><br>Defendants. | Case No. 3:25-cv-10757-CRB<br><br>**PLAINTIFF DR. ANDREI GAFITA'S OPPOSITION TO DEFENDANT NUCS AI, INC.'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:  July 24, 2026<br>Time: 10:00<br>Dept.: Zoom videoconference<br>Judge: Hon. Charles R. Breyer<br><br>COMPLAINT FILED: December 17, 2025<br>AMENDED COMPLAINT FILED: June 1, 2026 |

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

# **TABLE OF CONTENTS**

Page (s)

I.    INTRODUCTION ..................................................................................................... 1

II.   SUMMARY OF ALLEGATIONS ........................................................................... 1

    A.   Gafita, Yagubbayli, And Ahmadov Found Nucs AI. ...................................... 1

    B.   Nucs AI Launches a Scheme to Prevent Gafita from Obtaining His Shares ... 2

    C.   Nucs AI Manufactures "Cause" to Terminate Gafita ...................................... 3

III.  ARUMENT ............................................................................................................. 5

    A.   The Amended Complaint States a Claim for Fraud in the Inducement of the
       First Amendment .............................................................................................. 6

        1.   The Amended Complaint Alleges That Defendants Used Promises of
            Gafita's Co-Founder Status to Induce Him to Revest His Shares .......... 6

        2.   The Amended Complaint Alleges That Promises of Future Board
            Membership Fraudulently Induced Gafita to Sign the Amendment ....... 9

    B.   The Amended Complaint Alleges the Elements of Fraud in the Inducement of
       the Second Amendment .................................................................................. 10

        1.   The Court Previously Held That Allegations Regarding "Fair
            Compensation" Were Actionable ........................................................... 10

        2.   Statements Regarding the Need for Revesting to Facilitate Fundraising
            Were False at the Time They Were Made ............................................. 12

    C.   The Complaint Alleges Fraud by Omission .................................................. 15

IV.   CONCLUSION ..................................................................................................... 15

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

**TABLE OF AUTHORITIES**

**CASES**                                                                 Page (s)

*Abry Partners V, L.P. v. F & W Acquisition LLC,*
891 A.2d 1032 (Del. Ch. 2006)................................................................ 9

*Arnold v. Society for Savings Bancorp, Inc.,*
650 A.2d 1270 (Del. 1994) ...................................................................15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................ 5

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011)...........................................................7, 9

*Cooper v. Pickett,*
137 F.3d 616 (9th Cir. 1997)................................................................. 5

*Doe v. Roblox Corp.,*
602 F. Supp. 3d 1243 (N.D. Cal. 2022) ............................................... 5

*Fecht v. Price Co.,*
70 F.3d 1078 (9th Cir. 1995)................................................................. 8

*Keegan v. Am. Honda Motor Co.,*
838 F. Supp. 2d 929 (C.D. Cal. 2012)..................................................14

*Lord v. Souder,*
748 A.2d 393 (Del. 2000) ...................................................................... 6

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,*
854 A.2d 121 (Del. Ch. 2004)..............................................................15

*Moore v. Kayport Package Exp., Inc.,*
885 F.2d 531 (9th Cir. 1989)..............................................................5, 7

*Norman v. Gerber Prods. Co.,*
No. 21-CV-09940-JSW, 2023 WL 122910 (N.D. Cal. Jan. 6, 2023) ...................... 7

*River Valley Ingredients, LLC v. Am. Proteins, Inc.,*
No. N19C-12-160 PRW CCLD, 2025 WL 3094942
(Del. Super. Ct. Nov. 5, 2025) ............................................................. 12

*Stephenson v. Capano Development, Inc.,*
462 A.2d 1069 (Del. 1983) ..................................................................15

*Stroud v. Grace,*
606 A.2d 75 (Del. 1991) .......................................................................15

*Toner v. Allstate Ins. Co.,*
821 F. Supp. 276 (D. Del. 1993)..................................................... 11, 12

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.,*
906 A.2d 168 (Del. Ch. 2006)..............................................................13

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

*Winner Acceptance Corp. v. Return on Cap. Corp.,*
 No. CIV.A. 3088-VP, 2008 WL 5352063 (Del. Ch. Dec. 23, 2008)................. iv, 8

**STATUTES**

Fed. R. Civ. P.:

 8(a)(2)........................................................................................................ 5

 9(b) ..................................................................................................... Passim

 12(b)(6) ..................................................................................................... 5

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

PLAINTIFF'S OPPOSITION TO DEFENDANT NUCS AI, INC.'S MOTION TO DISMISS
CASE NO. 3:25-CV-10757-CRB

**SUMMARY OF ARGUMENT**

The Amended Complaint's Fifth and Sixth Causes state well-pled claims of fraud.

Fifth Cause of Action: Fraud in the Inducement of the First Amendment. The Fifth Cause, for fraud in the inducement as to the First Amendment to Gafita's stock purchase agreement, states a claim under Delaware substantive law. Gafita allegedly relied on specific promises that he would be treated as a co-founder and given a Board seat, which were intended to and did lead him to believe that his status at Nucs AI was safe and his economic interests would be protected, in agreeing to revest his fully-vested shares. The Amended Complaint also satisfies Rule 9(b) pleading requirements. It identifies a series of specific fraudulent statements, made at specific times and at specific locations, as part of a fraudulent scheme to seize Gafita's equity vulnerable to seizure. *See Winner Acceptance Corp. v. Return on Cap. Corp.*, No. CIV.A. 3088-VP, 2008 WL 5352063, at \*10 (Del. Ch. Dec. 23, 2008) ("Viewing the Complaint as a whole and in the light most favorable to Plaintiffs, Winner has alleged with sufficient particularity to satisfy Rule 9(b) a series of fraudulent promises made by Defendants, including facts which support a reasonable inference that they had no intention to fulfill the alleged promises at the time they were made.")

Sixth Cause of Action: Fraud in the Inducement of the Second Amendment. The Sixth Cause states a claim that Gafita was fraudulently induced to enter into the Second Amendment to his Stock Purchase Agreement, which fully revested all his shares, including those that vested under the First Amendment. The Amended Complaint alleges a separate series of misstatements, including Ahmadov's specific representations to Gafita that he would be treated fairly and fairly compensated, and that his further revesting was required to attract outside investment. The Amended Complaint alleges specific statements made on specific dates and at specific locations as part of an ongoing scheme to convince Gafita to revest his equity so he could be fully divested upon his pretextual termination. The Court has already held that statements regarding "fair compensation" are actionable statements of current fact. Statements about the need to revest to support further fundraising were false because Nucs AI was not engaged in any fundraising activity either around the time the statement was made or in the time proximally after he

Grellas Shah LLP
550 California St., Suite 1040
San Francisco, CA 94104

executed the Second Amendment.  And neither Ahmadov nor Yagubbayli, who both had also time-vested a portion of their equity, revested their equity at that time.

PLAINTIFF'S OPPOSITION TO DEFENDANT NUCS AI, INC.'S MOTION TO DISMISS
CASE NO. 3:25-CV-10757-CRB

## I.    INTRODUCTION

The Amended Complaint states claims for fraudulent inducement of two amendments to Plaintiff Dr. Andrei Gafita's Stock Purchase Agreement with Defendant Nucs AI. Gafita agreed to assign valuable intellectual property and provide professional services, including manhours, expertise, and access to his professional network, to Nucs AI in exchange for a fully vested majority interest in the company. Over the next year, his co-founders, Defendants Ahmadov and Yagubbayli, induced him to partially and then fully revest his shares with false promises. Once Gafita's interest was revested, Defendants pretextually terminated his Consulting Agreement and repurchased all his shares, leaving him with no compensation for his contributions to Nucs AI.

The Amended Complaint meticulously and clearly alleges a series of statements and omission made by Defendants, including the precise time, place, and manner of these statements, and describes how Gafita specifically relied on these false assurances and omissions in agreeing to revest his shares. The Motion revisits arguments that this Court has already rejected, and demands levels of detail and comprehensiveness that far exceed the requirements of Rule 9(b). Because Gafita has more than adequately alleged the required elements of fraudulent inducement of the two amendments, the Motion should be denied.

## II.    SUMMARY OF ALLEGATIONS

### A.    Gafita, Yagubbayli, and Ahmadov Found Nucs AI.

Gafita is a doctor and medical researcher at Johns Hopkins Medicine working in the field of oncology. (Amended Complaint [Dkt. 37] ("AC") ¶ 2.) Gafita began developing new AI technology for diagnosing and treating prostate cancer in 2023. (AC ¶ 17.) He explained his new technology to Yagubbayli, a software engineer and acquaintance of Gafita, who subsequently introduced Gafita to Ahmadov in early 2024. (AC ¶ 18.) Ahmadov was not a doctor or scientist but had a business background and e-commerce experience. (*Id.*) In March 2024, the three partners founded Nucs AI. (*Id.*)

In May 2024, the Nucs AI Board approved the issuance of stock: 1,850,000 shares to Ahmadov, 2,450,000 shares to Yagubbayli, and 4,700,000 shares to Gafita. (AC ¶¶ 20–21.)

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

While Ahmadov and Yagubbayli's shares were subject to a vesting schedule, Gafita's were issued fully vested in recognition of Gafita's substantial contributions to Nucs AI, including the development of the novel technology and business plan underlying the entire company. (AC ¶ 21.) Ahmadov and Yagubbayli were named the company's initial directors at formation, but promised Gafita that he would receive a Board seat in the future. (AC ¶ 19.)

**B.      Nucs AI Launches a Scheme to Prevent Gafita from Obtaining His Shares.**

Ahmadov and Yagubbayli made Gafita believe he was viewed as a key team member who would be richly compensated for his contributions to Nucs AI. Beginning in April 2024, Nucs AI held Gafita out as a co-founder, internally and externally, including by identifying him as one on pitch decks, referring to him as a co-founder in internal communication, and asking him to sign a Co-Founder Code of Conduct. (AC ¶ 26.) In May 2024, Gafita traveled to Baku, Azerbaijan with Ahmadov and Yagubbayli to meet a potential Nucs AI investor. During that meeting, Ahmadov and Yagubbayli repeatedly referred to Gafita as a co-founder and key member of Nucs AI in his presence. (AC ¶ 27.) And in May 2024, Ahmadov sent Gafita a WhatsApp message stating "I have full belie[f] for you and I'm gonna do whatever it takes to make your ideas commercial," intended to make Gafita feel like an essential member of the Nucs AI team. (AC ¶ 28.)

Nucs AI and Gafita entered into a Common Stock Purchase Agreement ("CSPA") on May 17, 2024, issuing Gafita 4,700,000 shares at a purchase price of $470 with no vesting conditions. (AC ¶ 22.) Only two months later, however, Ahmadov came to Gafita and told him, falsely, that Gafita's shares needed to be subjected to a vesting schedule to facilitate raising outside investment. (AC ¶ 25.) Ahmadov presented Gafita with an amendment to his CSPA that revested Gafita's shares, with 25% to vest on June 17, 2024, and the remaining vesting over three years. (AC ¶ 23.) Gafita, relying both on Ahmadov and Yagubbayli's earlier assertions that he was a key team member and a co-founder and that he would be given a Board seat in the future, as well as Ahmadov's representation that revesting was necessary for fundraising, concluded it was safe and necessary to revest his shares as requested, and did so. (AC ¶ 30.)

These representations continued through late 2024. Ahmadov made repeated statements

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

PLAINTIFF'S OPPOSITION TO DEFENDANT NUCS AI, INC.'S MOTION TO DISMISS
CASE NO. 3:25-CV-10757-CRB

to Gafita that he would be treated fairly and would be highly compensated for his work and his contributions. (AC ¶¶ 33–34.) Several months later, in December 2024, Ahmadov told Gafita his vesting schedule needed to change again. This time, Ahmadov presented Gafita with a Second Amendment to the CSPA which revested all of Gafita's shares, including those that vested in July under the First Amendment. (AC ¶ 35.) Again, Ahmadov falsely told Gafita this was a necessary sacrifice to facilitate investment, though Ahmadov and Yagubbayli, who also had time-vested a portion of their equity, were not required to revest, and Nucs AI was not engaged in any fundraising efforts at the time (or anytime thereafter). (AC ¶ 37.) Gafita, reasonably relying on Ahmadov's representations that his revesting was essential to the success of the company and that his equity was safe, signed the Second Amendment. (AC ¶ 36.)

Along with the Second Amendment, Gafita entered into two additional agreements with Nucs AI: a Stock Restriction Agreement and a Consulting Agreement. Both these agreements referenced Gafita's shares, and both provided for acceleration of his stock options if he was terminated without "Cause." (AC ¶ 44, Ex. E., Consulting Agreement, § 3 ("However, if the Company terminates this Agreement at any time without Cause (as defined in the Stock Restriction Agreement to be entered into with the Consultant), the vesting of the unvested Shares shall accelerate, and such unvested Shares shall immediately vest at 100%.").) "Cause" is defined in the Stock Restriction Agreement (AC Ex. D § 1(a)(iv).) The Stock Restriction Agreement also provided Nucs AI could only force a repurchase of Gafita's unvested shares if Gafita was terminated for Cause. (*Id*. § 1(a)(i).)

The acceleration provision in the Consulting Agreement, coupled with the buyback restrictions in the Stock Restriction Agreement, were important protections Gafita negotiated because, having originally developed the core of the company's IP and business model in return for a 100% vested majority ownership interest and having gone from there to having all of his shares subject to vesting, he wanted assurances that he would have a fair opportunity to eventually vest his entire ownership interest. (AC ¶¶ 30–31.)

**C.      Nucs AI Manufactures "Cause" to Terminate Gafita.**

In April 2025, Gafita asked to have the vesting schedule from the First Amendment

Grellas Shah LLP
550 California St., Suite 1040
San Francisco, CA 94104

restored, and at a meeting in Baltimore that month Ahmadov agreed to restore Gafita's prior vesting schedule and to give him his long-promised Board seat. (AC ¶ 49.) But barely a week later, Ahmadov reneged, offering to restore Gafita's vesting schedule only if Gafita agreed to a substantial reduction in his equity stake. (AC ¶ 50.) Gafita refused.

A month later, Ahmadov and Yagubbayli again told Gafita that Nucs AI would only restore his vesting schedule if he agreed to a significant reduction in his equity position. (AC ¶ 52.) When Gafita again refused and objected to his treatment, Ahmadov told him, on May 23, 2025, that the Nucs AI Board had decided to terminate his Consulting Agreement "as soon as possible." (AC ¶ 53.) Nucs AI offered Gafita two options: step down from the company and retain his vested shares (which at that point numbered fewer than 500,000), or agree to a reduced "advisor" role and reduce his equity by 50%, which was subject to vesting.  (AC ¶ 54.) Ahmadov told Gafita that if he did not choose one option or the other, his Consulting Agreement would be terminated.

But Nucs AI apparently realized that if it terminated Gafita, 100% of his equity would immediately vest. So Nucs AI instead asked Gafita to stop all "non-essential" work while Ahmadov and Yagubbayli determined how to capture Gafita's shares. (AC ¶ 55.) On June 20, 2025, Ahmadov sent Gafita a notice stating that Gafita was in breach of his Consulting Agreement and giving him 30 days to cure it. (AC ¶ 56.) The breaches articulated in the notice were either fabricated or impossibly vague, rendering "cure" impossible. (*Id*.) The notice was pretextual and intended only to avoid accelerated vesting of Gafita's shares. Gafita asked for clarification so he could attempt to cure the purported breaches, but Nucs AI never responded. Instead it cut off Gafita's access to the company's email and Google Drive and demanded return of his computer. (AC ¶ 58.)

Nucs AI terminated Gafita on August 11, 2025, purportedly (but pretextually) for "Cause." (AC ¶ 61.) Nucs AI subsequently purported to repurchase Gafita's shares. In sum, Nucs AI induced Gafita to work for the company with the promise of substantial equity that it never intended to let him realize. By repeatedly promising him a Board seat, equity and other compensation, and falsely insisting that his (and only his) equity stake needed to be adjusted to

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

PLAINTIFF'S OPPOSITION TO DEFENDANT NUCS AI, INC.'S MOTION TO DISMISS
CASE NO. 3:25-CV-10757-CRB

facilitate outside investment, Nucs AI induced Gafita to gradually and then finally sign away his rights before it terminated him and stripped him of all the benefit of his work and contributions.

## III.    ARGUMENT

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). The Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1254 (N.D. Cal. 2022).

A plaintiff asserting a claim for fraud must additionally "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The 9th Circuit has interpreted this to require plaintiffs to plead the "who, what, when, where, and how" of the fraudulent acts. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Gafita alleges that he was fraudulently induced to enter into two agreements: the First Amendment to his Stock Purchase Agreement in July 2024, which subjected all but 25% of his fully vested shares to revesting, and the Second Amendment to his Stock Purchase Agreement in January 2025, which fully revested all his shares, including those that had vested under the First Amendment. While the promises made around each Amendment were somewhat different, they were all part of a continuous scheme to revest Gafita's shares so that, upon his pretextual termination, which Ahmadov and Yagubbayli were already planning, he would be entirely divested of his stake in Nucs AI. The Complaint alleges both a general scheme to defraud and a series of specific misrepresentations and omissions made under it. These allegations satisfy Rule 9(b) and Delaware law.

To state a claim for fraudulent inducement, a plaintiff must allege: "1) a false

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance." *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000). The Complaint satisfies these requirements with the particularity required by Rule 9(b).

### A.    The Amended Complaint States a Claim for Fraud in the Inducement of the First Amendment.

The Amended Complaint alleges that Gafita was induced to sign the First Amendment, which revested 75% of his fully-vested shares, through Defendants' promises, assurances, and omissions that they viewed Gafita as a co-founder of the company and a key member of the team who would be given a Board seat. Gafita reasonably relied on these assurances when he agreed to revest his shares because he believed his status at the company would protect him from divestment and that his contributions to the company would be rewarded. These representations were false. Ahmadov and Yagubbayli did not view Gafita as a key team member and had no intention of putting him on the Board. From the start, they intended to take his intellectual property and contributions without compensating him. The misstatements and omissions induced Gafita to revest, and ultimately lose, his shares.

### 1.    The Amended Complaint Alleges That Defendants Used Promises of Gafita's Co-Founder Status to Induce Him to Revest His Shares.

The Motion argues that the allegations regarding Gafita's co-founder status fail because Gafita does not plead materiality, reliance, or falsity. (Mot. at 15.) Yet the Motion ignores many significant allegations in the Amended Complaint.

The Motion states that Gafita "fails to allege how his co-founder status was material to his decision to execute the First Amendment or how he relied on such representations in doing so." (*Id.*) But the Amended Complaint explains this directly and repeatedly:

> These representations made Gafita feel comfortable that revesting his shares was safe and that he would eventually be fully compensated. Ahmadov and Yagubbayli also told Gafita that revesting his shares was necessary to facilitate outside investment. However, Ahmadov and Yagubbayli did not change the

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

vesting schedule for their own shares.

> As a result of these representations, Gafita believed that Ahmadov and Yagubbayli viewed him as a core member of the Nucs AI team and that his status as a co-founder and eventual membership on the Board of Directors would protect his interest in Nucs AI, to which he had contributed valuable IP and sweat equity. In reasonable reliance on these representations, and on Ahmadov's insistence that revesting was necessary to secure outside investment, Gafita agreed to sign the First Amendment.

(AC ¶¶ 29–30.) The allegations are reiterated in the Claims section of the Amended Complaint:

> Gafita relied on defendants' false statements and omissions, and this reliance was reasonable. Because Nucs AI, Ahmadov, and Yagubbayli made representations to him to make him believe that he was a co-founder of the company, a key member of the Nucs AI team, and that they would make him a director of the company, Gafita was willing to weaken his interest in his Nucs AI shares through revesting. Gafita was told, and reasonably believed, that such revesting was necessary to secure outside investment.

(AC ¶ 107.) The Motion also argues that, as to the investor meeting in Baku, "Gafita does not identify 'who' made the alleged misrepresentations" and does not identify who shared the Co-Founder Code of Conduct document. (Mot. at 16.) This is simply wrong. The Amended Complaint alleges that "Ahmadov and Yagubbayli represented that Gafita was a co-founder and key member" of Nucs AI, (AC ¶ 27), and that Ahmadov sent the Code of Conduct to Gafita on June 12, 2024, (AC ¶ 26). The Amended Complaint also alleges specific representations made by Ahmadov in April and May 2024 via WhatsApp intended to make Gafita believe he was a key member of the team who would be compensated fairly. (AC ¶¶ 26, 28.)

Gafita need not plead verbatim every statement made to him over a period of months. The allegations in the Amended Complaint satisfy Rule 9(b), which requires only "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks omitted). A complaint satisfies Rule 9(b) if it "identifies the circumstances constituting fraud so that Defendant can prepare an adequate answer from the allegations." *Norman v. Gerber Prods. Co.*, No. 21-CV-09940-JSW, 2023 WL 122910, at *2 (N.D. Cal. Jan. 6, 2023) (citing *Moore*, 885 F.2d at 540.) The Amended Complaint does so.

The Motion also objects that these representations were unrelated to the First

Amendment and cannot be material to Gafita's decision to execute it. (Mot. at 15.) But the Amended Complaint explains the connection between these representations and the First Amendment. Before the First Amendment, Gafita's equity was fully vested. After the First Amendment, it was largely unvested. Gafita allegedly agreed to substantially risk the security of his interest in the company because Ahmadov and Yagubbayli made numerous statements to him in early 2024 intended to make him believe that they viewed him as a key member of the team, a co-founder, a future director of the company, and somebody who could safely revest his shares because his status at the company could not leave him uncompensated. (AC ¶ 29.)

The Amended Complaint alleges that these representations were false because Ahmadov and Yagubbayli did not view Gafita as a co-founder, a key member of the team, or someone they planned to make a director. They instead viewed him as a target with valuable intellectual property and professional connections they could leverage and then leave uncompensated. (*See* AC ¶¶ 28–29.) Whether he *was* a co-founder is not the test of falsity. (*See* Mot. at 17.) He clearly was. The statements were false because Ahmadov and Yagubbayli did not intend to treat Gafita as a co-founder and a key team member—they intended to create that impression in his mind so he would give up his vested shares and make it easier to divest him entirely in the future. That they ultimately did so illustrates the point. *See Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995) ("A plaintiff may also satisfy Rule 9(b) with allegations of circumstantial evidence if the circumstantial evidence alleged explains how and why the statement was misleading when made.")

Likewise, that Ahmadov and Yagubbayli also had vesting conditions on their shares is beside the point. (*See* Mot. at 16.) Gafita initially held his shares free and clear. Ahmadov and Yagubbayli convinced him to submit most of them to vesting. The Amended Complaint alleges that they did not disclose their true motivation for their demand, and made statements intended to create a false sense of security to induce Gafita to revest, and Gafita relied on those false statements and omissions in agreeing to revest his shares. (AC ¶¶ 28–30.) That is the fraudulent scheme surrounding the First Amendment. *See Winner Acceptance Corp. v. Return on Cap. Corp.*, No. CIV.A. 3088-VP, 2008 WL 5352063, at *10 (Del. Ch. Dec. 23, 2008) ("Viewing the

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

Complaint as a whole and in the light most favorable to Plaintiffs, [Plaintiff] has alleged with sufficient particularity to satisfy Rule 9(b) a series of fraudulent promises made by Defendants, including facts which support a reasonable inference that they had no intention to fulfill the alleged promises at the time they were made.")

**2.    The Amended Complaint Alleges That Promises of Future Board Membership Fraudulently Induced Gafita to Sign the Amendment.**

Similarly, the Amended Complaint's allegations regarding Board membership are sufficient to establish a claim for fraud in the inducement. The Amended Complaint alleges multiple specific statements (and generally alleges others) from Ahmadov and Yagubbayli telling Gafita that he would be made a director. Specifically, the Amended Complaint alleges:

- That Ahmadov and Yagubbayli promised Gafita a seat on the Board in the future at the time Nucs AI was formed, (AC ¶ 19);

- That Ahmadov and Yagubbayli repeatedly assured Gafita they intended to add him to the Board in advance of presenting him with the First Amendment, (AC ¶ 25); and

- That Ahmadov and Yagubbayli invited Gafita to a Board meeting on June 5, 2024, at which the three of them were the sole attendees, (AC ¶ 25).

The Motion characterizes these allegations as "an invitation to attend a board meeting" which it argues is not actionable because "it is not a statement of fact about board membership . . . ." (Mot. at 17.) But that he was invited to a Board meeting in June 2024, shortly before he was asked to revest substantially all his shares, evidences the scheme perpetrated by Defendants to convince Gafita that he would be given a Board seat, with which he could protect his equity and compensation. (AC ¶ 30.) This establishes materiality and reliance, and the allegations satisfy Rule 9(b)'s requirement that the Complaint show the "who, what, when, where, and how of the misconduct charged." *See Cafasso*, 637 F.3d at 1055.[1]

---

[1] The Motion suggests that because the Second Amendment has an integration clause and did not itself provide Gafita with a Board seat, other promises regarding Gafita's future Board membership cannot represent actionable misstatements. Mot. at 18. But the Second Amendment's integration clause does not have anti-reliance language. AC Ex. B § 3(b). Delaware courts have found that this type of integration clause does not foreclose a fraud claim. *See Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1059 (Del. Ch. 2006) ("[W]e have held . . . that murky integration clauses, or standard integration clauses

9

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

**B.    The Amended Complaint Alleges the Elements of Fraud in the Inducement of the Second Amendment.**

The Amended Complaint establishes that Gafita was fraudulently induced to enter into the Second Amendment—which fully revested *all* his shares, even those that vested under the First Amendment—through a series of misrepresentations and omissions, specifically Ahmadov's assertions that Gafita would be treated and compensated fairly for his efforts and intellectual property, and Ahmadov's insistence that further revesting was necessary for fundraising—fundraising that was not currently happening, did not happen after Gafita revested his shares, and which Nucs AI had no intention of pursuing at the time. The Motion renews arguments rejected by the Court in its ruling on Defendants' prior motion to dismiss and disregards newly pled allegations. The Complaint satisfies Rule 9(b) and states a claim for fraud in the inducement.

**1.    The Court Previously Held That Allegations Regarding "Fair Compensation" Were Actionable.**

The Motion argues that Ahmadov's statements that he would treat Gafita fairly and that Gafita would be fairly compensated for his contributions to Nucs AI are not actionable. (Mot. at 19.) This argument was considered and rejected by the Court in deciding Defendants' motion to dismiss the original complaint. The Court held that statements regarding Gafita's fair treatment were "not alleged as an opinion," but rather were false because "the defendants schemed to *deny* [Gafita] compensation" and "never intended to be fair." (Order [Dkt. 35] at 14–15.) The same analysis is true regarding the Amended Complaint.

The Motion also argues that "fair compensation" is inherently subjective and cannot support a claim for fraud. (Mot. at 20.) This argument, too, was rejected previously by the Court. (Order at 14–15 ("Here, Gafita alleges that the statement was a falsehood because the defendants schemed to deny him compensation by having him vest his shares in a way that would enable

without explicit anti-reliance representations, will not relieve a party of its oral and extra-contractual fraudulent representations.").

them to pretextually strip the shares from him later.").) The Court also held that "an opinion can still be actionable as fraud if the speaker either did not hold that opinion or did not have a good-faith basis for it." (Order at 15 (quotation marks omitted).) The Court only granted the motion as to this aspect of the claim because it found that the complaint "fail[ed] to satisfy the heightened pleading standard." (*Id*.)

New details are alleged in the Amended Complaint. The Amended Complaint quotes specific representations made by Ahmadov to Gafita in advance of his demand that Gafita execute the Second Amendment. *First*, the Amended Complaint alleges that Ahmadov told Gafita, in October 2024, "I'm a fair guy, I'll treat you fairly," and told him in November 2024 that "you won't need to work again after we make it." (AC ¶¶ 33, 34.) The Amended Complaint alleges the precise date and location of these statements. (*Id*.) The Motion argues that these statements hurt the claim because the Court previously "found that the original Complaint centers on the 'compensation' part of the statement" while the new allegations simply relate to basic fairness. (Mot. at 20.) The Motion is wrong on both counts. *First*, the Court did note that "fair compensation" was actionable, but did not limit its analysis to specific invocations of compensation only, holding that "Gafita alleges that the defendants never intended to be fair." (Order at 15.) *Second*, the new allegations *do* relate to compensation. The Motion disregards the statement "you won't need to work again after we make it," which implies that Gafita's equity will be worth enough that he will not need to work after Nucs AI succeeds, but even Ahmadov's "I'll treat you fairly" statement is alleged in the context of a conversation in which Ahmadov promised Gafita he would be provided with fair compensation. (AC ¶ 33.) Critically, at the time Ahmadov made these statements, Gafita had already made significant contributions to Nucs AI: his intellectual property, his time, his sweat equity, and access to his professional network. (AC ¶¶ 30–31.) In context, his statements were not just suggestions of general, subjective future "fairness." They were clearly intended to make Gafita believe he would be materially compensated, and, given Gafita's sole compensation came in the form of equity, that he would receive and retain his shares.

The Motion again relies on the *Toner* case. In *Toner*, the court found that an employer's

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

statement to a prospective employee that "the sky was the limit" for his earning potential was non-actionable puffery. *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 281 (D. Del. 1993). Here, Ahmadov and Yagubbayli's statements to Gafita that he would be fairly compensated were delivered in the context of asking him to sign agreements that reduced his vested equity and as such reduced his compensation. The inducement for Gafita to enter into the Amendments and revest his shares was a promise to provide him with fair compensation in the future. That was false, and it was a false statement of present intent, not puffery or opinion.

The Motion argues that the Complaint does not establish the falsity of the statements regarding fairness. But the Court recognized before that "Gafita alleges that the defendants never intended to be fair" as evidenced by the alleged scheme to divest Gafita's shares and deny him compensation. (Order at 15.) Those allegations are in the Amended Complaint as well, as are additional allegations that the promises of fair treatment were false when made because Ahmadov and Yagubbayli had already devised a plan to pretextually terminate Gafita and divest him of his shares, leaving him entirely uncompensated for his contributions to the company. (*See* AC ¶ 115.); *see also River Valley Ingredients, LLC v. Am. Proteins, Inc.*, No. N19C-12-160 PRW CCLD, 2025 WL 3094942, at *8 (Del. Super. Ct. Nov. 5, 2025) ("In many cases, the transaction itself may serve as both the motive and opportunity to commit the fraud.") (quotation marks omitted)

### 2. Statements Regarding the Need for Revesting to Facilitate Fundraising Were False At the Time They Were Made.

The Motion insists that Defendants' false statements about the need for Gafita to revest his shares through the Second Amendment to facilitate fundraising are non-actionable as forward-looking statements, opinion, or predictions. (Mot. at 21.) This argument misconstrues the allegations. The Amended Complaint alleges that (1) Ahmadov and Yagubbayli never intended to permit Gafita to retain his shares and made a number of false representations to him to get him to revest his shares to facilitate their scheme; and (2) that Nucs AI had no present intent to seek fundraising in late 2024—when the fraudulent statements were made—or in or around January 2025 when the Second Amendment was executed. (*See* AC ¶¶ 34, 36, 37, 114,

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

115.) The allegation is not that Ahmadov was making incorrect predictions of the company's future prospects in November 2024 when he told Gafita that he needed to revest the rest of his shares to facilitate investment; the allegation is that Ahmadov and Yagubbayli were trying to get Gafita to revest for an entirely different reason, *i.e.*, to seize his shares, and that the stated need to revest for fundraising was false and the company was not even trying to fundraise at the time. (AC ¶ 34.) The representations made about how revesting "will be so good for the company" and that Gafita "won't need to work again after we make it" were false because Ahmadov knew that Gafita would never see the fruit of his work because he intended to steal Gafita's shares by terminating him. (*Id*.)

The Motion cites the *Trenwick* case for the principle that predictions of future success are not actionable. But *Trenwick* provides a useful counterexample to the Amended Complaint. There, the court rejected a claim of fraud where, in the court's words, "there must have been fraud because the estimates eventually turned out wrong." *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 209 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007). The court rejected statements like "the Chartwell acquisition would generate good results" and "that operational synergies of a certain level could be achieved as a result of the Chartwell merger" as "[s]peculative conclusions unsupported by fact" that "are entirely vague and general, and do not satisfy Rule 9(b)." *Id*. at 209–210. Here, the falsity was not in the *content* of the predictions, it was in the very *making* of them. Whether or not the company succeeded, Ahmadov knew when he made those statements that Gafita would not be allowed to participate in any such success because he never intended to let Gafita retain his shares. Thus, the truth or falsity of his promise that "you'll never have to work again" did not turn on whether or not Nucs AI turned out to be successful. It was false because Gafita would not have equity if Nucs AI succeeded, and Ahmadov knew that, and he lied to Gafita to convince him to revest his shares.

The Motion also argues that statements about fundraising are not actionable because the Amended Complaint fails to allege that they were false at the time they were made. As discussed above and throughout this Opposition, however, there are many allegations establishing their

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

PLAINTIFF'S OPPOSITION TO DEFENDANT NUCS AI, INC.'S MOTION TO DISMISS
CASE NO. 3:25-CV-10757-CRB

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

falsity—Nucs AI did not intend to fundraise, did not conduct any fundraising around the time the statements were made or the Second Amendment was signed, and, most importantly, did not procure Gafita's revesting to facilitate investment, but did so to facilitate their scheme to divest him of his shares entirely. (*See* Order at 14–15 ("Gafita alleges that . . . the defendants schemed to *deny* him compensation by having him vest his shares in a way that would enable them to pretextually strip the shares from him later."); AC ¶¶ 37, 114, 115, 119 *et seq*.) And while the First Amendment put Gafita on the same vesting schedule as Ahmadov and Yagubbayli, the Second Amendment, which fully revested all his shares, made him considerably worse off than both of them because they did not concurrently revest their own time-vested shares in early 2025. (AC ¶ 38.) This is further indicia of falsity.

The Motion presents a number of counterarguments—that fundraising could have happened later that was relevant to the revesting, that it's possible Ahmadov believed revesting was necessary for fundraising—but they are simply that: counterarguments. They go to the merits of the claim, not to the sufficiency of pleading. The heightened pleading standard of Rule 9(b) does not require Gafita to prove his claims via complaint. *See Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 938 (C.D. Cal. 2012) ("Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter. All that is necessary is identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.") (quotation marks omitted). Here, the Amended Complaint adequately alleges that: (1) Defendants procured Gafita's revesting with promises of fair compensation and assurances that it was necessary to facilitate fundraising (which would itself make Gafita's equity more valuable); (2) Defendants at all times intended to revest Gafita's shares to facilitate their scheme to divest him of all compensation; (3) Nucs AI did not undertake any fundraising between November 2024 and Gafita's departure from the company, and never intended to do so; (4) Defendants concealed their true motivation from Gafita to induce him to execute the Second Amendment and revest his shares; and (5) Defendants executed on their fraudulent scheme when Gafita was pretextually terminated, losing all his shares. These facts easily establish the "who, what, when, where, and how" of the Complaint's fraudulent inducement claim as to the Second

Amendment.

### C.    The Complaint Alleges Fraud By Omission.

The Amended Complaint also alleges that Ahmadov and Yagubbayli, who by nature of being directors and officers of Nucs AI occupied a fiduciary role *vis a vis* Gafita, a shareholder, owed Gafita a duty of candor and defrauded him by failing to disclose their true intent with regard to his shares. (*See* AC ¶¶ 34, 103, 106, 107, 113, 116, 117.)

Delaware law recognizes fraud by omission when the defendant conceals material facts or remains silent despite a duty to speak. *See Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983) ("But fraud does not consist merely of overt misrepresentations. It may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak. Thus, one is equally culpable of fraud who by omission fails to reveal that which it is his duty to disclose in order to prevent statements actually made from being misleading."). The fiduciary relationship alleged here supplies the duty to disclose material facts: directors must disclose fully and fairly material information within their control when seeking stockholder action, *see Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1991), and fiduciaries who choose to speak must not make partial disclosures that omit facts necessary to make the disclosure accurate and not misleading, *Arnold v. Society for Savings Bancorp, Inc.*, 650 A.2d 1270 (Del. 1994); *see also Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 146 (Del. Ch. 2004) (minority investor adequately alleged fraud where company failed to disclose bribery scheme of which it was aware, rendering statements in management reports misleading). Ahmadov and Yagubbayli's omissions to Gafita, a stockholder, in the context of asking him to revest his shares presents an independent basis on which to deny the Motion.

### IV.    CONCLUSION

Plaintiff Dr. Andrei Gafita respectfully requests the Court deny the Motion in full. Should any portion of the Motion be granted, Gafita requests leave to amend.

//

//

//

Grellas Shah LLP
550 California St., Suite 1040
San Francisco, CA 94104

Respectfully submitted,

Dated:  June 29, 2026            GRELLAS SHAH LLP


By:  _/s/ Justin L. Sowa_
     Justin L. Sowa, Esq.
     Attorneys for Plaintiff
     DR. ANDREI GAFITA

PLAINTIFF'S OPPOSITION TO DEFENDANT NUCS AI, INC.'S MOTION TO DISMISS
CASE NO. 3:25-CV-10757-CRB